UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELIAS YU,

                    Plaintiff,

             -against-

UNITED STATES DEPARTMENT OF
TRANSPORATION, UNITED STATES
MARITIME ADMINISTRATION, UNITED
STATES MERCHANT MARINE ACADEMY,
MARK H. BUZBY, Individually and as
Administrator of the UNITED STATES
MARITIME ADMINISTRATION, and JAMES A.
HELIS, Individually and as Superintendent of the
UNITED STATES MERCHANT MARINE
ACADEMY,

                    Defendants.
-----------------------------------------------------------X

Docket No. <u>2:18-cv-5560</u>

ECF CASE

**<u>COMPLAINT</u>**

**<u>Jury Demand</u>**

      Plaintiff, ELIAS YU, by his attorneys, GALLO VITUCCI KLAR LLP, allege as for his Complaint against defendants, UNITED STATES DEPARTMENT OF TRANSPORATION, UNITED STATES MARITIME ADMINISTRATION, UNITED STATES MERCHANT MARINE ACADEMY, MARK H. BUZBY, Individually and as Administrator of the UNITED STATES MARITIME ADMINISTRATION, and JAMES A. HELIS, Individually and as Superintendent of the UNITED STATES MERCHANT MARINE ACADEMY, upon information and belief as follows:

## **<u>INTRODUCTION</u>**

      1.     This is an action based upon Defendant's conduct in improperly and unlawfully disenrolling Plaintiff, ELIAS YU, from the United States Merchant Marine Academy (hereinafter

"Academy"), thereby barring him from completing his studies at the Academy (Class of 2019) and seeking Plaintiff's immediate readmission to the Academy.

2.      Plaintiff, ELIAS YU, was a first-class midshipman at the Academy.  He was a member of the Academy football team and a logistics and intermodal transportation major.  Aside from the proceedings that are the subject of this action, he has never been the subject of any disciplinary proceeding; nor has he been the subject of any serious disciplinary action; nor has he been the subject of any performance review board.

3.      Following an overseas incident, wherein Plaintiff had unknowingly ingested a "spiked drink" containing an unknown drug, Plaintiff was charged with seven violations of the 2011 Midshipman Regulations.  Following an Executive Board Hearing, Plaintiff was found guilty on six of the charges during Phase I of the Executive Board proceedings.  During Phase II of the Executive Board proceedings, after considering the testimony of multiple witnesses and Plaintiff's academic, extracurricular, and disciplinary record, that same Executive Board recommended that Plaintiff be **retained** at the Academy and setback to the Class of 2020, that he continue with alcohol counseling, that he attend anger management class, and that he contribute in "*some way*" to the Sea Year lecture on alcohol in order to bring attention to the dangers of drink spiking overseas.

4.      Defendant, JAMES A. HELIS (hereinafter "HELIS"), Superintendent of the United States Merchant Marine Academy, did not attend the Executive Board or examine any of the witnesses.  However, despite the well-though recommendation by the Executive Board, the defendant, Mr.  HELIS, arbitrary and capriciously disenrolled Plaintiff from the Academy in disregard of the strong recommendation of the Executive Board.

5.     Following Mr. HELIS's decision, Plaintiff appealed the determination to Defendant, MARK H. BUZBY, the Administrator of the United States Maritime Administration. Plaintiff provided compelling arguments and supporting evidence, to demonstrate that: the Executive Board's findings on guilt during Phase I were not based on admissible evidence; that the Executive Board improperly applied vague standards/requirements from superseded regulations/notices; that the Executive Board's findings were not supported by available evidence; and that the Superintendent's decision to disenroll Plaintiff from the Academy was improper; and, that the charges and the proceedings against Plaintiff were improper, as they violated basic principles of law, fairness and due process.  Unfortunately, Mr. BUZBY denied Plaintiff appeal and upheld the disenrollment decision of Mr. HELIS.

## **JURISDICTION**

6.     This action arises under the Due Process Clause of the Fifth Amendment to the United States Constitution; the Equal Protection Clause of the 14th Amendment to United States Constitution; the Administrative Procedures Act; and, Bivens v. Six Unknown Federal Bureau of Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971).

7.     This Court has jurisdiction over this action pursuant to 5 U.S.C. §701 et seq. (Review of Actions by Administrative Agencies); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity of citizenship); 28 U.S.C. §1346 (United States as a defendant); 28 U.S.C. §2201 (declaratory judgment); and 28 U.S.C. §2202 (injunctive relief).

## VENUE

8.      Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) as the acts complained of occurred in the Eastern District of New York, and some of the Defendants reside in the Eastern District of New York.

## JURY DEMAND

9.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which he is entitled a to a jury.

## THE PARTIES

10.     Plaintiff, ELIAS YU, was at all relevant times a resident of the State of Texas and enrolled as student member of the United States Merchant Marine Academy, located in Kings Point, New York, Class of 2019.

11.     At all times set forth herein, upon information and belief, the defendant, UNITED STATES DEPARTMENT OF TRANSPORTATION, (hereinafter "DOT") is an agency of the United States of America, located at West Building, 1200 New Jersey Avenue, SE, Washington, D.C., 20590.  Upon information and belief, the DOT operates, funds and/or maintains the United States Merchant Marine Academy, located at Kings Point, New York.

12.     At all times set forth herein, upon information and belief, the defendant, UNITED STATES MARITIME ADMINISTRATION, (hereinafter "MARAD") is an agency of the United States of America, within the United States Department of Transportation, located at West Building, 1200 New Jersey Avenue, SE, Washington, D.C., 20590.  Upon information and belief, MARAD administers financial programs to develop, promote, and operate the U.S. Maritime

Service, the United States Merchant Marine, and operates and administers the United States Merchant Marine Academy.

13.     At all times set forth herein, upon information and belief, the defendant, UNITED STATES MERCHANT MARINE ACADEMY, (hereinafter "USMMA" or "Academy"), is an educational institution that is an instrumentality of the federal government charged with the responsibility of training the officers of the United States Merchant Marine, located at 300 Steamboat Road, Kings Park, New York.  The Academy is owned, operated and/or maintained by the DOT and MARAD.

14.     At all times set forth herein, upon information and belief, the defendant, MARK H. BUZBY, (hereinafter "BUZBY"), is the present Administrator of the United States Maritime Administration.

15.     At all times set forth herein, upon information and belief, the defendant, JAMES A. HELIS, (hereinafter "HELIS") is the present Superintendent of the United States Merchant Marine Academy and resides within the Eastern District of New York.

## FACTS COMMON TO ALL CLAIMS

16.     Aside from the proceedings that are the subject of this action, Plaintiff had never been the subject of any disciplinary proceeding.

17.     Aside from the proceedings that are the subject of this action, Plaintiff had never been the subject of any serious disciplinary action.

18.     Aside from the proceedings that are the subject of this action, Plaintiff had never been the subject of any performance review board.

19.     Plaintiff maintains a cumulative average above 3.0 at the Academy.

20.     Plaintiff earned an academic gold star for the third term of academic year 2017-18.


The Bahrain Incident

21.     On December 8, 2017, Plaintiff was assigned to serve onboard the USNS TIPPECANOE, as part of the Academy's sea year program.

22.     On December 8, 2017, while on authorized liberty (time off), the Plaintiff went to a local establishment with crewmembers of the USNS TIPPECANOE, and Academy midshipmen.

23.     While at the local establishment, a female patron handed Plaintiff an unknown drink.

24.     Plaintiff drank the unknown drink given to him by the female patron.

25.     Soon after drinking the unknown drink, Plaintiff began to lose consciousness.

26.     Thereafter, Plaintiff woke up in a holding cell, not knowing how he got there or what had happened.

27.     Bahraini Government personnel informed Plaintiff that he was suspected of assaulting a Chinese national, stealing a vehicle, getting into a car crash and damaging property (motorcycles).

28.     Plaintiff had no recollection of the alleged events occurring and informed the authorities of such.

29.     Plaintiff consumed no more than seven (7) alcoholic drinks on the evening of the Bahrain incident.

30.     On December 9, 2017, nearly seven (7) hours after he took his first drink, Plaintiff's BAC was reportedly determined to be 0.214 by the Bahrain Government Authorities.

31.     Plaintiff was thereafter questioned by the Bahraini authorities, without the presence of counsel.

32.     Plaintiff was thereafter questioned by agents/investigators from the Naval Criminal Investigative Service (hereinafter "NCIS"), without the presence of counsel.

33.     Plaintiff informed the NCIS agents of his suspicion that he had been given a "spiked" drink, possibly containing an unknown "date rape" drug.

34.     On December 9, 2017, nearly thirteen (13) hours after the incident had occurred, the NCIS collected blood and urine samples from Plaintiff.

35.     Upon information and belief, the NCIS agents did not have a warrant for the collection of blood samples from Plaintiff.

36.     Plaintiff was not charged by the Bahrain Government.

37.     Plaintiff was removed from the USNS TIPPECANOE, and returned to the United States, depriving him from the opportunity to complete his "sea year" studies as required by the Academy.

38.     Upon his arrival to the Academy, plaintiff was placed on restriction to the Academy's grounds, without any charges or disciplinary proceedings been initiated against him.


Drug and Alcohol Testing/Treatment

39.     On December 18, 2017, nine (9) days after collection of Plaintiff's urine and blood samples, these were sent via FedEx – a commercial carrier – to Dover Air Force Base for testing.

40.     Plaintiffs urine and blood samples arrived on January 5, 2018, which is nearly twenty-seven (27) days after collection took place.

41. Thereafter, the Forensic Toxicology Laboratory, Armed Forces Medical Examiner System, issued a report wherein it detected no ethanol or drugs in Plaintiff's samples tested.

42. The report from the Forensic Toxicology Laboratory, makes no mention of any tests conducted for Tramadol, GHB, or similar commonly used "date rape" drugs.

43. The report from the Forensic Toxicology Laboratory, contains no mention of the condition of the samples (blood and urine) upon arrival at the testing facility, or their condition upon testing.

44. On or about January 18, 2018, Plaintiff voluntarily presented himself at the Academy's Clinic, Patten Hall, and requested an alcohol dependency evaluation.  Plaintiff's request was denied.

45. On February 1, 2018, Plaintiff sought an alcohol evaluation at Northwell-Zucker Hillside Hospital, Addiction Recovery Services.

46. On February 15, 2018, LCSW, Zucker Hillside Hospital, Northwell Health, issued a letter regarding their evaluation of Plaintiff.  The letter is silent in regard to any alcohol or substance dependency.

47. Plaintiff was tested for alcohol, multiple times at Northwell-Zucker Hillside Hospital, and each time he tested negative for alcohol consumption.

48. Plaintiff underwent a drug test (hair follicle) to determine the presence of any foreign substance (drugs/date rape drugs) in his body.

49. The results of Plaintiff's drug test (hair follicle) came back positive for the presence of two common "date rape" drugs – GHB and Tramadol.

50. Plaintiff's drug test (hair follicle) tested for the approximate time frame when the Bahrain incident had occurred.

51.     There is no clinical explanation for the presence of any drugs in Plaintiff's system.

52.     Reportedly, the Academy conducted standard midshipmen drug test on Plaintiff multiple times, and in the early weeks of November 2017, and no drugs were ever detected in Plaintiff's system.

Academy Charges

53.     On February 28, 2018, Lieutenant Commander (LCDR) J. Curran, of the Academy, placed Plaintiff on report for "*Honor Offense*" violations, and issue him an email titled "*Conduct Record Deficiency*".   Counsel for the Academy would later inform Plaintiff that these charges had been issued erroneously.

54.     On February 27, 2018, the Plaintiff's counsel sent a letter to Defendant, Mr. HELIS, via the Academy's counsel, notifying the Academy of the positive "date rape" drug test results, and requesting dismissal of any charges.

55.     On March 1, 2018, Plaintiff was notified that the Academy had rejected his request for dismissal, and that he would be charged shortly with several violations to the Academy's regulation.   The Academy did not address the evidence presented, nor did it offer any reason for its decision.

First Notice of Executive Board Disciplinary Hearing

56.     On March 14, 2018, Rear Admiral (RADM) Susan L. Dunlap, Deputy Superintendent of the Academy, served Plaintiff with a "Notice of Executive Board Disciplinary Hearing".

Case 2:18-cv-05560-SJF-AYS   Document 12-10   Filed 10/04/18   Page 10 of 26 PageID
#: 393
Case 2:18-cv-05560-SJF-AYS   Document 12-10   Filed 10/04/18   Page 10 of 26 PageID #: 10

57.     Plaintiff was directed to, "*In accordance with Chapter 10, Section 1001 (a) of the 2011 USMMA Midshipman Regulations, as revised in Superintendent Notice 2016-07 USMMA Sea Year Policy,*" to appear before an Executive Board for a hearing to consider multiple charges against him.

1.      The specific charges against Plaintiff were:

*(1)     On or about 09 December 2017, you failed to conduct yourself with propriety, sobriety, decorum and sound judgment by consuming an excessive quantity of alcohol, physically assaulting a Chinese national, stealing the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, driving the vehicle down an alleyway and crashing it into motorcycles, and then fleeing on foot, in Juffair, Bahrain, in violation of Sections 102, 104.a.2, 201.a, and 1104 of the Midshipman Regulations, and paragraph 3 of Superintendent Instruction 2016-04, USMMA Sea Year Conduct Policy;*

*(2)     On or about 09 December 2017, you physically assaulted a Chinese national, in Juffair, Bahrain, in violation of Sections 221.b and 1109.15 of the Midshipman Regulations;*

*(3)     On or about 09 December 2017, you consumed an excessive quantity of alcohol, and engaged in drunken behavior, including but not limited to, physical assault of a Chinese national, theft of the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, drunken driving, damage of personal property of Saudi Arabian nationals, and fleeing on foot, in Juffair, Bahrain, in violation of Sections 204.a and 1105.c.3 of the Midshipman Regulations;*

*(4)     On or about 09 December 2017, you engaged in conduct which reflects discredit on the Academy and the Regiment of Midshipmen by consuming an excessive quantity of alcohol, physically assaulting a Chinese national, stealing the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, driving the vehicle down an alleyway and crashing it into motorcycles, and then fleeing on foot from the scene of the crimes, in Juffair, Bahrain, in violation of Section 1109.11 of the Midshipman Regulations;*

*(5)     On or about 09 December 201 7, you operated a vehicle in a reckless or careless manner in such a way as to endanger the lives or property of others, in Juffair, Bahrain, in violation of Section 1109.13 of the Midshipman Regulations;*

*(6)     On or about 09 December 2017, you stole a Chinese national's vehicle, in Juffair, Bahrain, in violation of Section 1109.18 of the Midshipman Regulations; and,*

(7) *On or about 09 December 2017, you willfully vandalized the personal property of Saudi Arabian nationals, in Juffair, Bahrain, in violation of Section 1109.5 of the Midshipman Regulations.*

58. The Academy noted in its hearing notice, that it intended to call only two (2) witnesses: Midshipman I. H. Veasna and Midshipman A. Aldridge.

59. The Executive Board hearing was scheduled for March 21, 2018.

60. Along with the "Notice of Executive Board Disciplinary Hearing", Plaintiff was handed an uncertified copy of the NCIS Investigation File (Report).

61. On March 15, 2018, Plaintiff's counsel requested an adjournment of the scheduled Executive Board hearing, due to the large number of documents that had been produced, which included documents in foreign language, and which could not be reviewed in the five (5) days allotted.

62. On or about March 19, 2018, the Academy granted the request and adjourned the hearing without date.

Second Notice of Executive Board Disciplinary Hearing

63. On April 11, 2018, RADM Dunlap served Plaintiff with a "Second Revised Notice of Executive Board Disciplinary Hearing", which included an "NCIS Supplemental Report". Authority, charges and members of the board, remained the same as in the previous hearing notice.

64. The Academy amended its witness list by adding Captain G. Albert, Head, Department of Professional Development and Career Services, as an additional Academy witness.

65. The Executive Board hearing was scheduled for April 23, 2018.

66. On April 19, 2018, Plaintiff submitted to the Academy a "Witness and Evidence List", for use at the Executive Board hearing.

67. The following morning, on April 20, 2018, Plaintiff was summoned to appear before RADM Dunlap, who proceeded to chastise him without Plaintiff's counsel present for submitting a large witness list and instructed Plaintiff that he was only permitted to have six (6) witnesses testify at the Executive Board hearing.

68. The Academy's would later state that Plaintiff would be permitted to call the witnesses he wished at the hearing.

69. On April 20, 2018, after conclusion of normal business hours, Plaintiff was notified of the adjournment of the scheduled hearing via email.

70. Reportedly, the Academy's intended witnesses were unavailable to testify, because they were still deployed at sea.

71. The Academy requested Plaintiff agree to waive the testimony of the Academy's witnesses. Plaintiff declined.

72. The hearing was thereafter adjourned without date by the Academy.


New Midshipmen Regulations

73. On June 27, 2018, the Academy issued a new Superintendent Instruction 2018-7, Midshipman Regulations, which superseded the prior Midshipman Regulations dated May 11, 2011 (i.e. the 2011 Midshipman Regulations).


Fourth Notice of Executive Board Disciplinary Hearing[1]

74. On July 17, 2018, RADM Dunlap served Plaintiff with a "Fourth Revised Notice of Executive Board Disciplinary Hearing".

---

[1] The Academy did not issue a "Third" hearing notice.

75.     Plaintiff was directed by the Academy to, "*In accordance with Chapter 6, Section 6.1 and 6.2 of the 2018 USMMA Midshipman Regulations, as set forth in Superintendent Instruction (SI) 2018-07,*" to appear before an Executive Board for a hearing to consider multiple charges against him.

76.     The cited charges against Plaintiff remained as specified in the prior hearing notices and referred to the citations in the superseded regulations.

77.      None of the charges against Plaintiff were updated to ensure they were contained and/or reflected in the new Midshipman Regulations.

78.     The Academy's hearing notice contained a footnote stating: "*On 27 June 2018, the Superintendent promulgated revised Midshipman Regulations via Superintendent Instruction (SI) 2018-07. The Executive Board will follow the procedures set forth in Chapter 6 of SI 2018-07. Since the alleged misconduct with which you are charged occurred when the previous Midshipman Regulations were in effect, the charges reference the sections from those 2011 Midshipman Regulations.*"

79.     The Executive Board hearing was scheduled for July 25, 2018.

80.     In the latest hearing notice, the Academy amended its witness list by removing Captain G. Albert, and adding Dr. Richard Wall, Department of Health Science, as a witness.

81.     In the latest hearing notice, the Academy substituted Midshipman M. Perri, the former Regimental Executive Office, with Midshipman A. Ibach, and incorrectly identified her in the hearing notice as "Regimental Commander."

82.     On July 23, 2018, Plaintiff submitted a "Supplemental - Witness and Evidence List", for use at the Executive Board hearing.

Executive Board Disciplinary Hearing

83.     On July 25, 2018, an Executive Board hearing on this matter was held as convened under the "Fourth Revised Notice of Executive Board Disciplinary Hearing".

84.     The hearing was chaired by RADM Susan L. Dunlap, Deputy Superintendent.

85.     In addition to the chair, members of the board included: Commander (CDR) D. Pulis, Assistant Academic Dean; CDR B. Hawksworth, Head, Department of Naval Science; Dr. G. Colet, Professor, Department of Marine Engineering, Midshipman A. Ibach, Regimental Commander (incorrect position).

86.     Defendant, Mr. HELIS, did not participate in-person at the hearing; he did not listen to live witnesses or to the Plaintiff; and, he did not question witnesses or the Plaintiff.

87.     Per the Midshipman Regulations, Executive Board Disciplinary Hearing's are divided in two phases: Phase I (the 'guilt' phase) and Phase II (the 'discipline/punishment' phase). Phases are run consecutively.


Executive Board Hearing – Phase I

88.     In Phase I of the hearing, the Academy called three (3) witnesses: Dr. Richard Wall, Department of Health Services, Midshipman I. H. Veasna, and Midshipman A. Aldridge.

89.     The Academy did not call any NCIS agent/investigator to provide testimony.

90.     The Academy did not call the alleged assault victim, i.e. the Chinese national, to provide testimony.

91.     The Academy did not call any witnesses from the Bahrain Government and/or its law enforcement agencies to provide testimony.

14

92.     The Academy did not call any laboratory technicians from the Bahrain Government or agencies to provide testimony.

93.     The Academy did not call the Bahrain personnel who conducted plaintiff's alcohol test in Bahrain to provide testimony.

94.     The Academy did not call the Forensic Toxicology Laboratory, Armed Forces Medical Examiner System, laboratory technicians, who conducted plaintiff's alcohol and blood tests to provide testimony.

95.     The Academy did not call any expert witness on the issues of alcohol consumption and/or its effects to provide testimony, not did it present any expert report,

96.     The Academy did not call any expert witness on the issues of drugs consumption and/or its effects to provide testimony, not did it present any expert report.

97.     The Academy did not introduce any admissible, original or sworn affidavits from the NCIS investigatory agents

98.     The Academy did not introduce any admissible, original or sworn affidavits from the Bahrain Government or agencies investigatory agents.

99.     The Academy did not introduce any admissible, original or sworn affidavits from the Forensic Toxicology Laboratory, Armed Forces Medical Examiner System, laboratory examiners/technicians.

100.     The Academy did not introduce any admissible, original or sworn affidavits from the Bahrain laboratory examiners/technicians.

101.     The Academy did not introduce the original or certified NCIS Investigation Report.

102.     The Academy did not introduce any admissible, original or sworn affidavit, from the alleged victim.

103.    Plaintiff introduced multiple exhibits, including but not limited to an expert toxicologist report; drug test results; and supporting documents.

104.    The 2018 Midshipman Regulations contained no clauses "grandfathering" or allowing for the application of the 2011 Midshipman Regulations post-issuance of the 2018 Midshipman Regulations.

105.    Applicable sections and language contained in the 2011 Midshipman Regulations were omitted from the 2018 Midshipman Regulations.

106.    The language of the 2018 Midshipman Regulations was more favorable to Plaintiff's defense, than the language in the 2011 Midshipman Regulations.

107.    Plaintiff hearing should have been held in accordance with the 2018 Midshipman Regulations.

108.    Neither the 2011 nor the 2018 Midshipman Regulations provide for the admission of hearsay testimony.

109.    The Executive Board admitted hearsay evidence at the hearing.

110.    The documents and statements contained in the NCIS Report are merely allegations which were submitted for their truth, thus they are classified as hearsay.

111.    The 2011 and the 2018 Midshipman Regulations provide the midshipman with the right to question all witnesses.

112.    The Academy's failure to call witnesses – from the NCIS, Bahrain Government, and/or laboratory technicians – to support and prove its case against the Plaintiff, deprived the Plaintiff of his right to question witnesses as provided in the Midshipman Regulations.

113.    Despite not calling any of the above noted witnesses, the Academy relied on their hearsay testimony as contained in the NCIS Report.

114.    The NCIS Report and statements, were not written in "first person" as required by the Midshipman Regulations.

115.    The NCIS Report notes that Plaintiff underwent "breathalyzer/blood" test while in custody by the Bahrain Police; however, the NCIS report only contains a blood test report, and no breathalyzer report.

116.    The Bahrain BAC test is suspect, unsupported by testimony and/or evidence, and is inadmissible as hearsay.

117.    Plaintiff was charged with violation of multiple vague and/or undefined offenses from the 2011 Midshipman Regulations.

118.    The 2011 Midshipman Regulations are vague and provide no guidance defining what constitutes "*propriety, sobriety, decorum and sound judgment*."

119.    The 2011 Midshipman Regulations are vague and provide no guidance defining what constitutes "*excessive quantity*" or "*drunken behavior*".

120.    The 2011 Midshipman Regulations are vague and provide no guidance defining the term "*conduct which reflects discredit*".

121.    The Executive Board improperly charged/tried Plaintiff for violating section of the 2011 Midshipman Regulations that no longer exists.

122.    The Executive Board improperly charged/tried Plaintiff for violating sections of 2011 Midshipman Regulations which are merely aspirational guidance.

123.    The NCIS investigatory agents failed to conduct a full and impartial investigation, leading to violation of Plaintiff's constitutional protections.

124.    The NCIS agents failed to interview the alleged assault's victim's wife as part of their investigation.  This, despite the alleged assault's victim reportedly telling the agents that his wife was present at the time of the alleged assault.

125.    The NCIS agents failed to secure videos of the alleged assault.  This despite the alleged victim stating that there were videos of the location of the incident.

126.    The NCIS agent failed to promptly conduct drug and alcohol tests on Plaintiff.

127.    The NCIS failed to secure evidence to determine the presence of "date rape" drugs in the Plaintiff's system.

128.    The NCIS blood test was defective, untimely, incomplete, and constituted a warrantless search.

129.    The NCIS Report contains no explanation as to why it delayed the collection of Plaintiff blood and urine samples.

130.    The Executive Board found Plaintiff "guilty" of charge 1, 2, 3, 4 and 6, by a vote of 3-2; Plaintiff was found guilty of charge 5, by a vote of 4-1; and not guilty on charge 7 by a vote of 5-0.


Executive Board Hearing – Phase II

131.    Plaintiff provided over eighteen (18) written statements from multiple professors, officers, classmates and mentors, to demonstrate his good character, exceptional performance and potential for service.

132.    Plaintiff provided a voluntary oral statement; a voluntary oral statement by his advisor, Professor M. Ales; and, the oral testimony of fifteen (15) character witnesses (Dr. Daniel Fong of the Department of Mathematics and Science; Midshipman (MN) J. Robertson; MN L.

Theriault; MN W. Martin; MN J. Wallace; MN A. Daniel; Mr. R. Irizarry; Lieutenant J. Jaeger of the Commandant's Office (by phone); MN K. Abbott; MN J. Cannell; MN T. Blauw; MN G. Irizarry; MN I. Goretoy; MN I. H. Veasna; and Mr. J. J. Yu (Plaintiff's father).

133.    Following deliberations, the Executive Board recommended that Plaintiff be **retained** at the Academy and setback to the Class of 2020, that he continue with alcohol counseling, that he attend anger management class, and that he contribute in some way to the Sea Year lecture on alcohol in order to bring attention to the dangers of drink spiking overseas.

Superintendent Decision

134.    On August 1, 2018, and contrary to the Executive Board's recommendation, Defendant, Mr. HELIS, Superintendent of the Academy, issued a decision disenrolling Plaintiff from the Academy.

Appeal To MARAD

135.    On August 22, 2018, Plaintiff appealed the disenrollment decision to MARAD.

136.    On October 2, 2018, Plaintiff was informed that Mr. BUZBY, Administrator of MARAD, had upheld the Superintendent's disenrollment decision, and denied Plaintiff's appeal.

137.    Thereafter, plaintiff was given only 48 hours to vacate the Academy's grounds.

138.    Plaintiff has no adequate remedy at law.

# FIRST CAUSE OF ACTION:

## RELIEF PURSUANT TO THE ADMINISTRATIVE

## PROCEDURE ACT

139.   Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 132 herein above.

140.   Defendants are all agents as defined by 5 U.S.C. §701, and thus their actions are subject to review under the Administrative Procedure Act.

141.   Defendants actions are final.

142.   There is no adequate remedy at law.

143.   Defendants aforesaid conduct, which resulted in the Plaintiff being found at fault and dismissed/disenrolled from the Academy, violated the Academy's own rules and procedures regarding such Hearings, was arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law; was contrary to the Due Process Clause of the Fifth Amendment; and/or was in excess of statutory jurisdiction, authority or limitations.

144.   Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' action to be unlawful and should set aside Defendants' conduct in dismissing/disenrolling Plaintiff from the Academy.

145.   Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' action to be unlawful and should compel Defendants to reinstate Plaintiff to the Academy.

## SECOND CAUSE OF ACTION:

## <u>VIOLATON OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION</u>

## <u>(Substantive Due Process)</u>

146.   Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 139 herein above.

20

147.    Plaintiff has property and liberty rights in his education and in the degree, license and official commission he is seeking, and all other rights and benefits granted to midshipmen enrolled at the Academy.

148.    Defendants' actions with respect to Plaintiff's property and liberty rights amounted to a deprivation of such rights in that Defendants have improperly found him guilty of violations to the Midshipman Regulations, improperly dismissed/disenrolled him from the Academy.

149.    Defendants' aforementioned conduct was in violation of the Academy's own policies, rules and regulations, was arbitrary and capricious and did not involve the exercise of proper judgment.

150.    Defendants' aforementioned conduct was motivated by bad faith or ill will unrelated to Plaintiff's guilt or innocence with respect to the charged conduct.

151.    Defendants deliberately and prejudicially assumed Plaintiff's guilt, failed to follow their own procedures, rushed to judgment, ignored the Academy's own policies, were intentionally dismissive of Plaintiff's statements and rights, and then overzealously punished Plaintiff.

152.    Defendants' aforementioned conduct violated Plaintiff's rights and was in violation of the Fifth Amendment of the United States Constitution.

153.    Defendants' violations of the Fifth Amendment have injured and will continue to injure Plaintiff.  Defendants' actions have thrown a bright young man's life, and future, in turmoil. A thorough and unbiased review of the facts and circumstances was required.

154.    Plaintiff is entitled to equitable and injunctive relief, and compensatory and punitive damages sustained as a result of Defendants' violations.

## THIRD CAUSE OF ACTION:

## <u>VIOLATON OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION</u>

### <u>(Procedural Due Process)</u>

155.    Plaintiff repeats, realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 148 herein above.

156.    Plaintiff has property and liberty rights in his education and in the degree, license and official commission he is seeking, and all other rights and benefits granted to midshipmen enrolled at the Academy.

157.    Defendants' actions with respect to Plaintiff's property and liberty rights amounted to a deprivation of such rights in that Defendants have improperly found him guilty of violations to the Midshipman Regulations, improperly dismissed/disenrolled him from the Academy.

158.    The aforementioned deprivation occurred without sufficient Due Process as afforded by the Fifth Amendment of the United States Constitution, as Defendants failed to afford Plaintiff a fair and meaningful opportunity to oppose the charges against him.

159.    Defendants failed to follow procedures to safeguard the rights of the Plaintiff and treated Plaintiff in a manner that was inconsistent with the manner in which they are obligated to handle midshipmen.

160.    Defendants failed to comply with their own policies, procedures, rules and regulations relating to the conduct of investigations and Plaintiffs Hearing including but not limited to the procedures and provisions set forth in the 2011 and 2018 Midshipman Regulations.

161.    The decisions to find Plaintiff guilty and to disenroll him from the Academy, were not careful and deliberate decisions nor were they arrived at in conformance with due process considerations or supported by the evidence.

22

162.    As a result of Defendant's aforementioned conduct, Plaintiff is entitled to equitable and injunctive relief, and compensatory and punitive damages.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant the following relief:

A.    Declare the action of Defendants, their agents, employees, others and successors in interest illegal and in violation of the United States Constitution and federal and state laws;

B.    Pursuant to 5 U.S.C. §706, deem Defendants' actions to be unlawful, set aside Defendants' determination that Plaintiff violated the Midshipman Rules and Regulations and applicable Superintendent Instruction(s);

C.    Pursuant to 5 U.S.C. §706, deem Defendants' actions to be unlawful, and compel the Academy to immediately reinstatement Plaintiff as a Midshipman at the Academy as a member of the Class of 2019, allow him to complete his studies at the Academy and if successfully completed, to graduate, and afford him all rights and benefits that he would have been afforded but for Defendants' improper conduct;

D.    Award Plaintiff compensatory, actual, and punitive damages, in an amount to be determined at trial;

E.    Award Plaintiff all costs, expenses and reasonable attorneys' fees; and

F.    Grant such other and further relief as to the Court is just and proper.

Dated:  Woodbury, New York
       October 4, 2018

                            Respectfully submitted,

By: _____

                     Richard González, Esq. (RG9291)
                     **GALLO VITUCCI KLAR LLP**
                     100 Crossways Park West, Suite 305
                     Woodbury, NY 11797
                     Tel: 212-683-7100
                     Fax: 516-226-1525
                     Email: rgonzalez@gvlaw.com
                     www.gvlaw.com

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ELIAS YU

**(b)** County of Residence of First Listed Plaintiff    Denton, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Richard Gonzalez, Esq.; Gallo Vitucci Klar LLP, 100 Crossways Park West, Suite 305, Woodbury, NY 11797; Tel: 212-683-7100.

## DEFENDANTS

US DOT, US MARAD, US MERCHANT MARINE ACADEMY, MARK H. BUZBY as Administrator of MARAD, JAMES A. HELIS as Superintendent of the USMMA.

County of Residence of First Listed Defendant    US
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

U.S. Attorney's Office, EDNY;
Ms. Ilene Kreitzer, Counsel to the Academy

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government Plaintiff
- ❏ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 2   U.S. Government Defendant
- ❏ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | Liability | | ❏ 840 Trademark | ❏ 460 Deportation ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 864 SSID Title XVI ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts ❏ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | | ❏ 895 Freedom of Information Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 871 IRS—Third Party 26 USC 7609 | |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other ❏ 550 Civil Rights ❏ 555 Prison Condition ❏ 560 Civil Detainee - Conditions of Confinement | ❏ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ❏ 2   Removed from State Court
- ❏ 3   Remanded from Appellate Court
- ❏ 4   Reinstated or Reopened
- ❏ 5   Transferred from Another District *(specify)*
- ❏ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. §701 et seq.; 28 U.S.C. § 1331, §1332, §1346, §2201, and §2202
Brief description of cause:
Appeal of disenrollment of midshipman from the U.S. Merchant Marine Academy

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE      DOCKET NUMBER

DATE
10/04/2018

SIGNATURE OF ATTORNEY OF RECORD
Richard Gonzalez, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, __Richard Gonzalez__ , counsel for __ELLIAS YU__ , do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐    monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☑    the complaint seeks injunctive relief,

☐    the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

None.

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)    Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?    ☐ Yes    ☑ No

2.)    If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?    ☑ Yes    ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?    ☑ Yes    ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:                    .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?    ☐ Yes    ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑ Yes                    ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes    (If yes, please explain    ☑ No

I certify the accuracy of all information provided above.

Signature: _____