UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ELIAS YU,

          Plaintiff,

    -against-

UNITED STATES DEPARTMENT OF
TRANSPORTATION, UNITED STATES
MARITIME ADMINISTRATION, UNITED
STATES MERCHANT MARINE ACADEMY,
MARK H. BUZBY, Individually and as
Administrator of the UNITED STATES
MARITIME ADMINISTRATION, and JAMES A.
HELIS, Individually and as Superintendent of the
UNITED STATES MERCHANT MARINE
ACADEMY,

          Defendants.
---------------------------------------------------------X
FEUERSTEIN, S.J., United States District Judge:

**FILED**
**CLERK**

2/25/2020 4:31 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Case No. 18-cv-5560
**Memorandum and Order**

I.    <u>Introduction</u>

      Plaintiff Elias Yu ("Plaintiff" or "Yu"), formerly a first-class midshipman at the United

States Merchant Marine Academy ("Academy"), seeks immediate readmission to the Academy,

challenging the decision to disenroll him as improper and unlawful.  (*See* Complaint, ECF No.

1.)  Defendants United States Department of Transportation ("DOT"), United States Maritime

Administration ("MARAD"), the Academy, Mark H. Buzby, Individually and as Administrator

of MARAD ("Buzby" or "Administrator"), and James A. Helis, Individually and as

Superintendent of the Academy ("Helis" or "Superintendent")(collectively, the "Defendants")

moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's

Complaint, arguing Plaintiff's only remaining claim is a request for judicial review of the

disenrollment decision, an agency action, which is governed by the Administrative Procedure

Act, 5 U.S.C. §§ 701-706 (the "APA"), and which action was not arbitrary, capricious, an abuse

of discretion or otherwise not in accordance with the law.  (*See* ECF No. 15, hereafter, "Dismissal Motion"); *see also* ECF No. 18 (Defendants' Letter Motion to Strike) at 2.)  Plaintiff opposes the Dismissal Motion.  (*See* ECF No. 17; hereafter, "Opposition" or "Opp'n".)  For the reasons articulated herein, the Dismissal Motion is GRANTED.

II.    Background

   *A. Factual Background*[1]

      1. Generally

         (*a.*) *The Defendants*

The Academy is a federal institution of higher education operated by MARAD, an operating administration of the DOT.  The Secretary of Transportation ("Secretary") is authorized by statute to maintain the Academy, which provides instruction to and prepares individuals for service in the U.S. Merchant Marine.  The Secretary has delegated to the MARAD Administrator the authority to carry out the functions and exercise the authorities vested in the Secretary regarding the operation of the Academy, who has, in turn, delegated the direction and supervision of the Academy to the Academy's Superintendent.  In that vein, the Superintendent is delegated authority to issue all regulations necessary for the accomplishment of the Academy's mission.

         (*b.*) *The Plaintiff*

Yu was a first-class midshipman enrolled in the Academy's Class of 2019.  He was majoring in Logistics and intermodal transportation, maintaining a cumulative grade point average above 3.0.  Yu had been a member of the Academy's football team.  As part of the

---

[1] The facts alleged in Plaintiff's Complaint are assumed to be true for purposes of deciding the Dismissal Motion.

Academy's "Sea Year" Program, in Fall 2017, Plaintiff was assigned to serve aboard the USNS Tippecanoe (hereafter, the "Vessel").

### 2. The Oversea Incident

On December 8, 2017, while the Vessel was docked in a port in Bahrain, Yu, other Academy midshipmen, and crewmembers of the Vessel went to local establishments while on authorized liberty. Yu alleges he consumed no more than seven (7) alcoholic drinks during that evening including an unknown drink handed to him by a female patron (hereafter, the "Unknown Drink"). Yu further alleges that, after consuming the Unknown Drink, he lost consciousness until he woke up in a holding cell under Bahraini governmental control but, "not knowing how he got there or what had happened." (Complaint, ¶26.) "Bahraini [g]overnment personnel informed Plaintiff that he was suspected of assaulting a Chinese national, stealing a vehicle, getting into a car crash and damaging property (motorcycles)." (*Id.*, ¶27.) Nearly seven (7) hours after his first drink, Yu's blood alcohol content ("BAC") was determined by Bahraini governmental authorities to be 0.214.

On December 9, 2017 and without the presence of counsel, Yu was first questioned by Bahraini governmental authorities and, then, by agents from the U.S. Naval Criminal Investigative Service ("NCIS"). He informed the NCIS agents of his suspicion that the Unknown Drink he consumed was spiked with a "date rape" drug. "[N]early thirteen (13) hours after the incident had occurred," NCIS collected blood and urine samples (hereafter, the "Samples") from Yu. (*Id.*, ¶34.)

### 3. Post-Oversea Incident Occurrences

While the Bahraini government did not press any charges against Yu, he was removed from the Vessel and returned to the United States. Upon his return, Yu was restricted to the

Academy's grounds.  Further, his removal from the Vesel prevented Yu from completing his requisite "Sea Year" studies.

On December 18, 2017, Yu's Samples were sent to the United States for testing; they did not arrive to Dover Air Force Base until January 5, 2018.  Thereafter, the Samples were tested by the Forensic Toxicology Laboratory, part of the Armed Forces Medical Examiner System (hereafter, the "Lab").  The Lab's subsequent report did not:  indicate the condition of the Samples upon arrival or upon testing; detect any ethanol or drugs; indicate any tests were conducted to detect Tramadol, GHB, or similar commonly used "date rape" drugs.

On January 18, 2018, Yu voluntarily went to the Academy's clinic to request an alcohol dependency evaluation; his request was denied.  On February 1, 2018, he sought an alcohol evaluation at Northwell-Zucker Hillside Hospital, Addiction Recovery Services (hereafter, "Hospital").  He was tested for alcohol multiple times at the Hospital; each time Yu tested negative for alcohol consumption.  Yu also underwent a hair follicle drug test which tested for the presence of foreign substances during the approximate time frame of the Oversea Incident; that test came back positive for GHB and Tramadol, two common "date rape" drugs.  In comparison, standard midshipmen drug testing performed upon Yu in early November 2017 detected no drugs in Yu's system.

### 4.  The Phase I Executive Board Disciplinary Hearing

"Per the Midshipman Regulations, Executive Board Disciplinary Hearing's [*sic*] are divided in[to] two phases:  Phase I (the 'guilt' phase) and Phase II (the 'discipline/punishment' phase).  Phases are run consecutively."  (*Id.*, ¶87.)

On March 14, 2018, the Academy served Yu with a "Notice of Executive Board Disciplinary Hearing" (hereafter, the "First Notice").  According to the First Notice, Yu was

charged with seven (7) counts of violating the Academy's 2011 Midshipman Regulations,[2] *to wit*:

> [Charge] (1)  On or about 09 December 2017, you failed to conduct yourself with propriety, sobriety, decorum and sound judgment by consuming an excessive quantity of alcohol, physically assaulting a Chinese national, stealing the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, driving the vehicle down an alleyway and crashing it into motorcycles, and then fleeing on foot, in Juffair, Bahrain, in violation of Sections 102, 104.a.2, 201.a, and 1104 of the Midshipman Regulations, and paragraph 3 of Superintendent Instruction 2016-04, USMMA Sea Year Conduct Policy;

> [Charge] (2)  On or about 09 December 2017, you physically assaulted a Chinese national, in Juffair, Bahrain, in violation of Sections 221.b and 1109.15 of the Midshipman Regulations;

> [Charge] (3)  On or about 09 December 2017, you consumed an excessive quantity of alcohol, and engaged in drunken behavior, including but not limited to, physical assault of a Chinese national, theft of the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, drunken driving, damage of personal property of Saudi Arabian nationals, and fleeing on foot, in Juffair, Bahrain, in violation of Sections 204.a and 1105.c.3 of the Midshipman Regulations;

> [Charge] (4)  On or about 09 December 2017, you engaged in conduct which reflects discredit on the Academy and the Regiment of Midshipmen by consuming an excessive quantity of alcohol, physically assaulting a Chinese national, stealing the Chinese national's 2012 Volvo with his six year old and one and one-half year old children inside, driving the vehicle down an alleyway and crashing it into motorcycles, and then fleeing on foot from the scene of the crimes, in Juffair, Bahrain, in violation of Section 1109.11 of the Midshipman Regulations;

> [Charge] (5)  On or about 09 December 2017, you operated a vehicle in a reckless or careless manner in such a way as to endanger the lives or property of others, in Juffair, Bahrain, in violation of Section 1109.13 of the Midshipman Regulations;

---

[2]  As revised in Superintendent Notice 2016-17 USMMA Sea Year Policy.

[Charge] (6)  On or about 09 December 2017, you stole a Chinese national's vehicle, in Juffair, Bahrain, in violation of Section 1109.18 of the Midshipman Regulations; and,

[Charge] (7)  On or about 09 December 2017, you willfully vandalized the personal property of Saudi Arabian nationals, in Juffair, Bahrain, in violation of Section 1109.5 of the Midshipman Regulations.

(Complaint, ¶57 (emphasis eliminated)(hereafter, collectively, the "Charges").)  Among other things, the First Notice identified witnesses the Academy intended to call and was served with an uncertified copy of the NCIS Investigation File (hereafter, the "Report").  Phase I of the Disciplinary Hearing was scheduled for March 21, 2018 but, upon Plaintiff's request, was adjourned to provide him additional time to prepare for that Hearing.

On April 11, 2018, a Second Notice of Hearing was issued by the Academy accompanied by an "NCIS Supplemental Report"; the cited authority, the Charges, and the Executive Board members who would conduct the Disciplinary Hearing remained unchanged.  In addition, the Academy identified its intended witnesses.  In response, the Plaintiff sent the Academy his list of intended witnesses.  When the Academy requested Plaintiff agree to waive the testimony of the Academy's witnesses, Plaintiff declined; the Phase I Disciplinary Hearing was again adjourned without date.

On June 27, 2018 and pursuant to Superintendent Instruction 2018-07, the Academy issued new Midshipman Regulations, which allegedly superseded the prior 2011 Midshipman Regulations.  The Academy's final[3] Notice of Hearing was issued in accordance with the 2018 Midshipman Regulations, but the Charges remained unchanged, citing the 2011 Midshipman Regulations; additionally, the final Notice of Hearing contained a footnote acknowledging the

---

[3]  The final Hearing Notice was identified as the "Fourth" Hearing Notice; however, the Academy did not issue a "Third" Hearing Notice.

revised 2018 Midshipman Regulations, instructing that the Executive Board would be following the hearing procedures set forth in the 2018 Midshipman Regulations, but also stating that "[s]ince the alleged misconduct with which you are charged occurred when the previous Midshipman Regulations were in effect, the [C]harges reference the sections from those 2011 Midshipman Regulations." (*Id.*, ¶78.) Thereafter, the parties exchanged amended witness lists.

Phase I of Yu's Disciplinary Hearing commenced on July 25, 2018. Deputy Superintendent Rear Admiral Susan L. Dunlap chaired the five-member Executive Board; Helis "did not participate in-person at the hearing; he did not listen to live witnesses or to the Plaintiff; and, he did not question witnesses of the Plaintiff." (*Id.*, ¶86.) The Academy called three witnesses, none of whom were: NCIS agents or investigators; the Chinese national who was the alleged assault victim; Bahraini government officials or other individuals involved in the Oversea Incident; Lab technicians; or experts regarding drug or alcohol consumption. Nor did the Academy submit any original or sworn affidavits from these potential witnesses. Similarly, the Academy did not introduce the original or a certified NCIS Report. Hearsay evidence was admitted during the Phase I Hearing.

By a vote of 3-to-2, Yu was found guilty of Charges 1, 2, 3, 4, and 6; he was found guilty of Charge 5 by a vote of 4-to-1. Yu was unanimously found not guilty of Charge 7.

### 5. The Phase II Executive Board Disciplinary Hearing

During the Phase II Disciplinary Hearing, Plaintiff provided more than eighteen written statements on his behalf to demonstrate his good character, exceptional performance and potential for service. He also made an oral statement to the Executive Board, as did his advisor. In addition, fifteen character witnesses testified on Yu's behalf; one of Yu's character witnesses was his father, who testified, *inter alia*, that he had never seen his son intoxicated, stating, "we're

Asian, and so the alcohol does not sit well with us." (Admin. Record at 1237-38 (Phase II Hr'g

Tr. 238:20-21).)

By a vote of 3-to-2, the Executive Board recommended Yu be retained at the Academy

with sanctions, *i.e.*, he: be set back to the Class of 2020; continue with alcohol counseling; attend

an anger management class; and contribute in some manner to the "Sea Year" lecture on alcohol

to bring attention to the dangers of drink-spiking overseas (hereafter, the "Recommendation").

      6. Helis' Decision[4]

On August 1, 2018, as the Academy's Superintendent, Helis issued his Decision

regarding the Executive Board's Recommendation, which stated in relevant part:

> Prior to deciding whether the charges against you were proven by a preponderance of the evidence, the Executive Board fully reviewed the NCIS Investigatory File . . . which was provided to you at the time you received the Notice. The Executive Board also considered your voluntary opening and closing statements (which you provided orally), your responses to its questions, and the supplemental documentary evidence you submitted to it. Finally, the Executive Board considered the testimony of the witnesses called by the Academy in Phase I . . . . You did not call any witnesses in Phase [I].
>
>     * * *
>
> Prior to its decision as to the appropriate penalty for these violations, the Executive Board fully reviewed your academic file and transcript . . . , your personnel jacket . . . , your company file . . . , your Midshipman Profile . . . , and your Sea Year file . . . , all of which were provided to you . . . . In addition, the Executive Board considered additional information you provided during Phase II of the hearing, including the voluntary statement you provided . . . , the voluntary statement of your advisor . . . , all the written character statements you provided, and the oral testimony of the 15 witnesses you called in Phase II . . . .
>
> The Executive Board recommended that you be retained at the Academy . . . . * * *

---

[4] (*See* Admin. Record at 450-458; hereafter, the "Helis Decision".)

Prior to making my decision in this case, *I thoroughly reviewed all of the evidence made available to the Executive Board, and listened to portions of the recording of the hearing. The preponderance of evidence clearly shows that you were very intoxicated*. Bahraini authorities conducted a blood-alcohol test shortly after the incident at which you were determined to have a blood-alcohol level of .214. While the NCIS blood-alcohol test conducted over eleven hours later indicated no alcohol in your system, the time lapse would account for this. *The preponderance of evidence also clearly shows* that, without provocation, you attacked a man on the street, stole his car and kidnapped his children who were in the vehicle, drove the vehicle recklessly while under the influence of alcohol, crashed the vehicle, and attempted to flee the scene of the accident, leaving the children in the car. *Your actions were dangerous to yourself and others, and reflect great discredit upon you and the Academy. You also embarrassed the U.S. Navy and Military Sealift Command (MSC)*, as you were on liberty from your assigned MSC vessel at the time of this incident, and an officer from the vessel had to report to Bahraini authorities to secure your release from jail.

*Your only defense is that you believe you **may have** unknowingly consumed a drug in a beer provided you by a woman in a bar earlier that evening. There is no evidence that supports this claim.* The hair follicle test for the presence of drugs that you presented only shows the presence of Tramadol, a prescription pain killer. The test only shows that you took this drug within a 90 day window. You presented many materials on Gamma-Hydroxy Butyric acid (GHB), but the test shows only normal levels that naturally occur within the body. You also presented materials on Rohypnol, which is a benzodiazepine. The test did not indicate the presence of benzodiazepine. The Navy drug screen performed within hours after the incident was also negative for drugs. *You provided NCIS investigators two different versions of when you might have taken the drug. The two versions involved different bars, and described different drinks. You were also told by your father in a text message that you should say you thought you were drugged. You replied, "I'm sticking with I got drugged."* You argued that you were drugged by people who wished to do you harm and rob you, yet *there is no evidence of any attempt by anyone to do so*. You claim to have no memory of any of the events involving the assault, auto theft, kidnapping, reckless driving, and fleeing the scene of the accident because you were drugged. If true, this loss of memory is likely to be the result of your extreme intoxication as shown by the blood-alcohol test performed by Bahraini officials.

> I find that *the preponderance of the evidence **clearly** supports the charges*. I accept the findings of the Executive Board . . . . * * *
>
> Your misconduct is completely unacceptable. *The blood-alcohol test administered by Bahraini officials clearly shows an extreme level of intoxication on your part*. Between Regimental training, sea year lectures, and being a member of one of the Academy's NCAA intercollegiate athletic teams, you have heard on repeated occasions the importance of being responsible with alcohol consumption. You failed to conduct yourself responsibly, in [a] manner consistent with the expectations of a leader of character preparing himself to serve as an officer in the Merchant Marine and the Armed Forces. *You have brought embarrassment on the Academy, the Regiment, and yourself, as well as the U.S. Navy*, and raised serious questions as to whether you can be trusted with the responsibilities of officership.
>
> Accordingly, I have decided to disenroll you from the Academy.

(Helis Decision (emphases added).)

On August 22, 2018, Yu appealed the Helis Decision to the MARAD. On October 2, 2018, Buzby, Administrator of the MARAD, informed Yu that his appeal was denied; he was given 48 hours to vacate the Academy grounds.

## B. Procedural Background

### 1. Plaintiff's Complaint

On October 4, 2018, Yu filed his Complaint, raising three causes of action: seeking a determination that Helis's Decision was arbitrary and capricious, warranting its being set aside, and, thereby facilitating Yu's re-enrollment in the Academy (*see* Complaint, First Cause of Action, ¶¶139-145); asserting the Defendants violated Yu's substantive due process rights by allegedly violating the "Academy's own policies, rules and regulations" and improperly disenrolling him from the Academy, which "was arbitrary and capricious and did not involve the exercise of proper judgment" and seeking, *inter alia*, injunctive relief as a result of Defendants'

alleged violation (*see* Complaint, Second Cause of Action, ¶¶146-154); and, claiming that "[t]he decisions to find Plaintiff guilty and to disenroll him from the Academy[] were not careful and deliberate decisions nor were they arrived at in conformance with due process considerations or supported by the evidence," thereby constituting a violation of procedural due process, which entitled him to, *inter alia*, injunctive relief (*see* Complaint, Third Cause of Action, ¶¶155-162).

## 2. The Temporary Restraining Order and Order to Show Cause

When he commenced this action, Yu also filed an application styled as an "Emergency Motion for Preliminary Injunction." (*See* ECF No. 2; hereafter, the "Emergency Motion".) Of significance, said filing was not accompanied by the requisite support memorandum (*see* Oct. 12, 2018 Hr'g Tr.[5] 23:23-24:17, 25:4-8) but, instead, consisted of a proposed Order to Show Cause ("OSC") accompanied by the supporting declaration of Yu's counsel, Richard Gonzalez (*see* Gonzalez Decl. (ECF No. 2 at 3-6)), and ten (10) exhibits. (*See id.; see also* ECF Nos. 2-2 through 2-11 (exhibits attached to Gonzalez Decl.).) According to Gonzalez, his declaration was make "in support of the within application in support of Plaintiff's Order to Show Cause seeking immediately [*sic*] reinstatement of plaintiff, ELIAS YU, to the . . . Academy, permitting him to attend classes, and to participate in the final examinations for the present academic term concluding on or about October 26, 2018." (Gonzalez Decl., ¶2; *see also* Opp'n , ¶12 ("Plaintiff's OSC request was intended to permit him to complete the present academic term, which concluded on October 26, 2018.").) There was no request for further injunctive relief beyond that timeframe.

---

[5] Hereafter, the Hearing Transcript of the Dissolution Hearing (docketed as ECF No. 30) will be cited as "Hr'g Tr. [page:line]".

On October 5, 2018, the Court issued a Temporary Restraining Order & Order to Show Cause (hereafter, the "TRO"), which ordered, *inter alia*, that pending a hearing on the Emergency Motion, the Academy was to reinstate Yu, permitting him to attend classes. (*See* ECF No. 5, ¶4.) Further, the Defendants were given "until October 12, 2018 (5:00 p.m. EST) to file their opposition, if any, to the Emergency Motion," and directed to "appear on October 18, 2018 . . . to show cause why the Emergency Motion should not be granted." (*Id.*, ¶¶2, 3.) The same day, the Defendants filed a response, moving pursuant to Rule 65(b)(4) of the Federal Rules of Civil Procedure for the dissolution of the TRO (hereafter, the "Dissolution Motion"). (*See* ECF No. 6.) The Court scheduled an October 12, 2018 telephonic hearing on the Dissolution Motion (hereafter, the "Dissolution Hearing"). (*See* Case Docket, Oct. 9, 2018 (electronic) Notice of Hearing on Motion.)

During the October 12 Dissolution Hearing, the following issues were elucidated. First, Yu filed his OSC requesting "to remain at the [A]cademy until [October] 26th;" he did not request "to . . . remain at the [A]cademy past that date." (Hr'g Tr. 24:22-24; *see also id.* at 17:21-18:2 (requesting, via his OSC, that Yu be permitted to remain in the Academy for two weeks to finish classes and sit for exams and "[a[fter that[,] the case will continue before your Honor").) Second, as to his Procedural Due Process cause of action raised in his Complaint, Yu conceded that: the Federal Rules of Evidence were not applicable to the Phase I Hearing (*see id.* at 4:3-5); the Academy was not obligated to present live witnesses during the Phase I Hearing (*see id.* at 10:9-12); and, the Academy could rely upon hearsay evidence to make its case against Yu (*see id.* at 10:24-11:1).[6] Yu had no other basis upon which to make a claim of procedural

---

[6] *See* 2018 Regulations, Ch. 6, § 6.2(1)(b) ("The rules of evidence for judicial proceedings do not apply" to Phases I and II Disciplinary Hearings.); *see also* Rev. 2011 Regulations, Ch. 10, §1001 (same).)

due process violation. (*See id.* at 11:10-12.) Third, regarding Yu's claim of a substantive due process violation, Plaintiff argued that the Superintendent did not properly weigh the evidence presented to the Executive Board in the Phase II Hearing when he declined to accept the Executive Board's recommendation that Yu remain in the Academy subject to conditions (*see id.* at 13:15-14:22, 15:1-5). No other grounds were presented to support that cause of action.

The Defendants conceded "there would be no irreparable harm" to them in permitting Yu to complete the school term, "with or without a TRO . . . [p]rovided come the 26th, Mr. Yu vacate the campus." (*Id.* at 20:16, 18.) Yu agreed "that on the 26th of October and completion of his exam" he "w[ould] vacate the campus" and "[n]ot return until this matter is resolved in the court." (*Id.* at 20: 22-23, 21:4-5; *see also id.* at 22:9-16.) Hence, Yu's Complaint remained viable (*see id.* at 21:8 ("The Complaint is not over.")), with the Court to review the Academy's decision, pursuant to the APA.

During the Dissolution Hearing, the Court extended the parties' submissions deadline to October 16, 2018, two days before the next scheduled hearing, *i.e.*, October 18, 2018. (*See id.* at 22:23-25; 23:11-16.) At the next hearing, the parties were to present anything new they wished the Court to consider in deciding whether Yu should be permitted to be re-enrolled.

### 3. The Defendants' Dismissal Motion

On October 16, 2018, the Defendants filed their opposition to the Plaintiff's application for an OSC and in support of their Dismissal Motion. Despite repeatedly stating he was not going to file a memorandum of law in support of his Emergency Motion, Plaintiff did so on October 23, 2018; said memorandum was also submitted in opposition to the Dismissal Motion. (*See* ECF No. 17; *see also supra* at 2 (defining memorandum as Plaintiff's "Opposition").) To the extent Plaintiff's memorandum "purport[ed] to be in support of Plaintiff's Order to Show

Cause," *i.e.*, the Emergency Motion, the Defendants requested it be stricken. (*See* ECF No. 18 (Letter Motion to Strike).)

(a.) *The Defendants' Position*

The Defendants did not address Plaintiff's Procedural or Substantive Due Process claims because they were abandoned by his counsel during the Dissolution Hearing. (*See* Support Memo at note 7.) Rather, because it remained unclear whether Yu would be pursuing some type of preliminary injunction beyond the TRO during the timeframe within which Defendants were given to file their submission, Defendants structured their arguments in support of their Dismissal Motion based upon the preliminary injunction standard (*see id.* at 7-9) and, in the context of doing so, addressed Yu's First Cause of Action, i.e., his APA claim for judicial review of the Defendants' decision to disenroll him from the Academy (*see id.* at 9-15).

More particularly, Defendants argued that the Defendants strictly followed Academy policies and procedures in conducting Yu's Disciplinary Hearing, first by having an Executive Board conduct the Phases I and II Disciplinary Hearings, then by said Executive Board making its recommendation to the Superintendent, and finally by the Superintendent thoroughly reviewing all of the evidence made available to the Executive Board, but deciding, nonetheless, to disenroll Plaintiff. (*See* Support Memo at 11.) They contend that any other allegations that the Academy failed to follow their "own policies or procedures are simply not rooted in the actual policies, or constitute Plaintiff's interpretation of, or disagreement with, the policies." (*Id.* (citing Complaint, ¶¶117-120, 122).)

Moreover, Defendants assert "it is undeniable that[:] the procedures governing discipline promulgated by the Superintendent are based on the statutory and regulatory commands that '[t]he Secretary shall maintain the. . . Academy to provide instruction to individuals to prepare

them for service in the merchant marine of the United States,' [and] . . the Superintendent has been 'delegated authority to issue all regulations necessary for the accomplishment of the Academy's mission.'"  (*Id.* at 12-13 (quoting 46 U.S.C. § 51301 and 46 C.F.R. § 310.67, respectively).)  Hence, the Academy's interpretation and implementation of its policies and procedures governing Plaintiff's misconduct and the Academy's subsequent disciplinary actions should be accorded deference.  (*See id.* at 13.)  Nor was the Helis Decision arbitrary, capricious or contrary to law, a highly deferential standard of review, since said Decision was based upon, *inter alia*, a "thorough[] review[] of all the evidence made available to the Executive Board," and Helis' "listen[ing] to portions of the recording of the hearing."  (*Id.* (quoting Helis Decision).)

(b.) *Yu's Opposition*

Plaintiff acknowledged that "the purpose of the OSC was solely to permit [him] to complete the . . . academic term, which conclude[d] on October 26, 2018" (Opp'n, ¶28), and that the "parties' consent effectively resolved [his] intended relief in his Order to Show Cause" (*id.* at ¶31).  Thus, what remained was "Plaintiff's Complaint and requested reliefs . . ." (*Id.* at ¶30 (citing Complaint); *see also id.* at ¶47 ("Plaintiff did not petition, nor did he intend to obtain, an injunction to permit him to remain at the Academy past October 26, 2018.").)  Of import, Plaintiff failed to address Defendants' note that:

> Plaintiff's counsel abandoned Plaintiff's Procedural and
> Substantive Due Process claims.  In addition, Plaintiff's counsel
> abandoned Plaintiff's contentions that the Academy should have:
> 1) charged Plaintiff under the Midshipman Regulations
> implemented by Superintendent Instruction 2018-7; and 2) applied
> the Federal Rules of Evidence to his disciplinary proceeding.

(Support Memo at note 7 (citation omitted); *see also id.* at 10 (stating that Plaintiff abandoned his due process claims).)  Nor did Plaintiff address any of the Defendants' APA arguments, which thoroughly addressed the essence of Yu's First Cause of Action.  Instead, Plaintiff argued

that his "Complaint is not only solid enough to survive pleading challenges, but he should also be entitled to present evidence to support his claims in his Complaint."  (Opp'n, ¶36.)

### 4.  The October 24, 2018 Hearing

Upon consent, the Court adjourned the October 18, 2018 hearing to October 24, 2018.  At the adjourned hearing, Plaintiff's counsel confirmed that Yu would be leaving the Academy by October 26, 2018; therefore, the TRO would no longer be necessary.  While counsel also reiterated that Yu wished to be re-enrolled in the Academy, he did not press for a preliminary injunction.  It was clear Plaintiff sought to accomplish re-enrollment via his First Cause of Action, the APA judicial review claim.  Hence, the parties were given a deadline to submit additional items necessary to complete the administrative record, upon which—the parties were advised—the Court's determination would be based.

## III.  Discussion

### A.  The Applicable Law:  The APA Standard of Review

Section 706 of the APA, which defines a court's scope of review, states:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  *The reviewing court shall—*
>> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>> (2) *hold unlawful and set aside agency action, findings, and conclusions found to be—*
>>> (A) *arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law*;
>>> (B) contrary to constitutional right, power, privilege, or immunity;
>>> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>> (D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added).  The standard of review under 5 U.S.C. § 706(2)(A) "is highly deferential and presumes the agency's action to be valid." *Residents for Sane Trash Sols., Inc. v. U.S. Army Corps. of Eng'rs*, 31 F. Supp.3d 571, 588 (S.D.N.Y. 2014), *appeal dismissed*, No. 14-3396 (2d Cir. Oct. 15, 2014); *see also Coal. on W. Valley Nuclear Wastes v. Bodman*, 625 F. Supp.2d 109, 116 (W.D.N.Y. 2007), *aff'd sub nom Coal. on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306 (2d Cir. 2009) ("An agency's decision is accorded a presumption of regularity. . . ." (quotations and citation omitted)).  The court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S. Ct. 814 (1971). "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one.  The court is not empowered to substitute its judgment for that of the agency." *Id.* at 416; *see also Natural Res. Defense Council, Inc. v. F.A.A. ("NRDC")*, 564 F.3d 549, 555 (2d Cir. 2009) (holding that under the deferential standard of review set forth in § 706(2)(A), courts "cannot substitute [their] judgment for that of the agency").  "The record must show that the agency [] examined the relevant data and articulated a satisfactory explanation for its action[;] . . . [and] the agency's decision must reveal a rational connection between the facts found and the choice made." *NRDC*, 564 F.3d at 555 (quotations, alterations and citations omitted); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43, 103 S. Ct. 2856 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (quotations and citation omitted)). In reviewing the agency's explanation, the court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs.*, 463 U.S. at 43. "If there is sufficient evidence in the record to provide rational support for the choice made by the agency, [the court] must uphold its decision." *Constitution Pipeline Co. v. N.Y.S. Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1697, 200 L. Ed. 2d 953 (2018) (quotations and citation omitted).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43. Although the reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given[,]" the agency's decision should be upheld, even if it is "of less than ideal clarity,[] if the agency's path may reasonably be discerned." *Id.* (quotations and citation omitted); *accord F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14, 129 S. Ct. 1800 (2009). "[T]he party challenging the decision has the burden of proof." *Bodman*, 625 F. Supp.2d at 116; *see also Miezgiel v. Holder*, 33 F. Supp.3d 184, 189 (E.D.N.Y. 2014) ("Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious.").

*B. The Present Case*

    1. <u>Plaintiff's Second and Third Causes of Action</u>

As an initial matter and as is evident from the Dissolution Hearing, Plaintiff has abandoned his Second and Third Causes of Action, *i.e.*, his Substantive Due Process and Procedural Due Process claims. (*See* {CITE}.) Even if that were not so, those claims would be deemed waived as Plaintiff failed to oppose the Defendants' assertion that said claims have been abandoned. *See, e.g., Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44 (2d Cir. 2018)("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by [plaintiff] when she failed to oppose them in her opposition to [defendant's] motion to dismiss."); *Doe v. Haas*, No. 19-cv-014, 2019 WL 6699910, *6 n.3 (E.D.N.Y. Dec. 9, 2019) (noting that where plaintiff did not address a claim in his opposition to a dismissal motion, said claim is abandoned); *Black Lives Matter v. Town of Clarkstown*, 354 F. Supp.3d 313, 328 (S.D.N.Y. 2018)(finding the failure to oppose a motion to dismiss a claim is deemed abandonment of that claim)(collecting cases). Hence, the Court need not address Plaintiff's due process claims. What remains, therefore, is Yu's First Cause of Action, which is his request for judicial review of the Helis Decision pursuant to the APA (*see* Dismissal Motion at 9 (stating Plaintiff seeks review of the Helis Decision pursuant to § 706(2)(A) of the APA); *see also* Letter Motion to Strike at 2 ("Plaintiff's only remaining claim, consist[s] of his request for judicial review of Defendants' decision to disenroll him from the . . . Academy . . . ."), which the Plaintiff does not dispute.

2. <u>Plaintiff's First Cause of Action (the "APA Claim")</u>

The Court's determination of Plaintiff's APA claim is limited to the Administrative Record, which has been submitted to the Court.[7] *See Kappos v. Hyatt*, 566 U.S 431, 438, 132 S. Ct. 1690, 1696 (2012)("Under the APA, judicial review of an agency decision is typically limited to the administrative record." (citing 5 U.S.C. § 706)); *Riverkeeper, Inc. v. EPA*, 358 F.3d 174, 184 (2d Cir. 2004)("Review under [5 U.S.C. § 706] is narrow, limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." (alternation and internal quotation marks omitted)). Therefore, contrary to his assertion and regardless how "solid" he believes his pleadings to be (*see* Opp'n, ¶36), Plaintiff is not entitled to present other evidence in support of his APA claim. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973)(("[T]he focal point for judicial review should be the administrative record and not some new record made initially in the reviewing court.").

Turning to the applicable APA review standard, then-District Court Judge Bianco has already found that these Defendants "are entitled to deference with regard to their policies, which were enacted in accordance with 46 U.S.C. § 51318 and other regulatory authority governing the Academy's operations." *Doe*, 307 F. Supp.3d at 144 (denying preliminary injunction because plaintiff had no likelihood of success on his APA claim that Academy "failed to follow its own

---

[7] To the extent the Plaintiff argues that in deciding a Rule 12(b)(6) motion, the Court's consideration is limited to, *inter alia*, "documents attached to the complaint as an exhibit or incorporated by reference" (Opp'n, ¶42 (citation omitted)), in this instance, the Administrative Record is deemed incorporated by reference especially in light of Plaintiff's request for an APA judicial review of the Helis Decision as articulated in his First Cause of Action. *See also generally Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss.").

rules, policies, procedures and regulations" (internal quotation marks and citation omitted)).

Upon the Administrative Record presented, there is no basis to conclude otherwise in this instance.  Indeed, there is no dispute here that pursuant to statutory authority, "[t]he immediate command of the . . . Academy shall be in the Superintendent of the Academy, subject to the direction of the Maritime Administrator under the general supervision of the Secretary of Transportation," 46 U.S.C. § 51301(c)(1), or that "[t]he Superintendent of the Academy is delegated authority to issue all regulations necessary for the accomplishment of the Academy's mission."  46 C.F.R. § 310.67.  Accordingly, Helis issued "Superintendent Instruction 2018-07", regarding the "Midshipman Regulations 2018" (hereafter, the "2018 Regulations"), "[t]o authorize and promulgate revisions to the Midshipman Regulations."  (Superintendent Instruction 2018-07 (dated June 27, 2018), § 1, *attached as* Ex. F (ECF No. 2-7) to Gonzalez Decl.; *see also* 2018 Regulations, Ch. 1, §1.1(3) ("The Academy is required by the U.S. Department of Transportation, Maritime Administration, as directed by the Merchant Marine Education and Training Act of 1980[,] to have formal rules governing the operation of the Regiment.  These Midshipman Regulations fulfills this requirement."), *attached as* Ex. F (ECF No. 2-7) to Gonzalez Decl.; *cf.*, Midshipman Regulations 2011, § 101(a) ("Purpose.  The purpose of these regulations is to establish Academy policy governing the obligations, standards, and responsibilities of Midshipmen."), *attached as* Ex. E (ECF No. 2-6) to Gonzalez Decl. [8])

 To the extent Yu contends that the Helis Decision is arbitrary and capricious because Yu was brought up on charges pursuant to the 2011 Regulations notwithstanding its replacement with the 2018 Regulations, pursuant to which the Phases I and II Disciplinary Hearings were

---

[8]  While, for convenience, the Court cites to the exhibits attached to the Gonzalez Declaration submitted in support of the Emergency Motion, the 2018 Regulations and 2011 Regulations are, nonetheless, part of the Administrative Record.

conducted, the Court finds that contention unpersuasive. The Academy's decision to charge Yu

with misconduct pursuant to the 2011 Regulations, but conduct his Disciplinary Hearings

pursuant to the 2018 Regulations was, essentially, its interpretation of its own regulations, which

is entitled to substantial deference if not manifestly unreasonable. *See, e.g., Lyng v. Payne*, 476

U.S. 926, 939 (1986), *United States v. Larinoff*, 431 U.S. 864, 872 (1977). This comports with

the long-held view that

> [f]ew decisions properly rest so exclusively within the discretion of
> the appropriate government officials than the selection, training,
> discipline and dismissal of the future officers of the military and
> Merchant Marine. Instilling and maintaining discipline and morale
> is these young [people] who will be required to bear weighty
> responsibility in the face of adversity—at times extreme—is a
> matter of substantial national importance scarcely within the
> competence of the judiciary.

*Wasson v. Trowbridge*, 382 F.2d 807, 812 (2d Cir. 1967)(addressing due process to

which a cadet is entitled when subject to expulsion from the Academy). The Academy's

decision to proceed in the manner it did is entitled to substantial deference because it was

reasonable.

As Plaintiff himself alleged, the Academy put him on notice that it would be doing so, *to*

*wit*:

> On 27 June 2018, the Superintendent promulgated revised
> Midshipman Regulations via Superintendent Instructions (SI)
> 2018-07. The Executive Board will follow the procedures set forth
> in Chapter 6 of SI 2018-07 [*i.e.*, the 2018 Regulations]. *Since the*
> *alleged misconduct with which you are charged occurred when the*
> *previous Midshipman Regulations were in effect, the charges*
> *reference the sections from those 2011 Midshipman Regulations*.

(Complaint, ¶78 (quoting Final Hearing Notice, note 1 (emphasis added)(further indicating that

"[c]opies of the current Regulations, the 2011 Midshipman Regulations, and SI 2016-04,

*USMMA Sea Year Conduct Policy*" where attached to Notice).) Nothing in the Administrative

Record demonstrates that, prior to the Disciplinary Hearings commencing, Yu objected to the

Academy proceeding in this manner. (*See, e.g.*, Phase I Hr'g Tr., Admin. Record at 1000-15.)

Nor is there any basis to find that the 2018 Regulations were intended to be applied retroactively.

Rather, charging Yu with violations pursuant to the 2011 Regulations is consistent with

American anti-retroactivity jurisprudence. *See generally Langraf v. USI Film Prods.*, 511 U.S.

244, 265-66 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in our

jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary

considerations of fairness dictate that individuals should have an opportunity to know what the

law is and to conform their conduct accordingly; settled expectations should not be lightly

disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be

assessed under the law that existed when the conduct took place has timeless and universal

appeal." (internal quotation marks and citation omitted)); *see also generally City of New York v.*

*Permanent Mission of India to United Nations*, 618 F.3d 172, 192-93 (2d Cir. 2010)(recognizing

that presumption against retroactivity applies to rulemaking by executive agencies and

departments). The Academy's rational for pressing misconduct charges as defined in the 2011

Regulations logically comports with this anti-retroactivity principle since Yu's misconduct

occurred when the 2011 Regulations were still in effect and the 2018 Regulations did not yet

exist. Thus, there was nothing arbitrary, capricious, abusive of discretion, or otherwise not in

accordance with the law for the "Executive Board . . . [to have] charged/tried Plaintiff for

violating section[s] of the 2011 Midshipman Regulations that no longer exist[ed]" (Complaint,

¶121) when the Phases I and II Disciplinary Hearings were conducted. Relatedly, the

presumption against retroactivity generally does not attach to changes in procedural rules. *See,*

*e.g., Landgraf*, 511 U.S. at 275; *see also Ahmad v. Morgan Stanley & Co., Inc.*, 2 F. Supp.3d

491, 496-97 (S.D.N.Y. 2014)(stating, as an example, that "a provision granting the right to a jury trial under a certain cause of action 'is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its effective date'" (quoting *Landgraf,* 511 U.S. at 280)). Since the Phases I and II Disciplinary Hearings were held when the 2018 Regulations were in effect, it was rational for the Academy to conduct them in accordance with those Regulations, as the manner in which the Hearings were conducted was procedural in nature. *See generally, e.g., Ahmad*, 2 F. Supp.3d at 498 (finding that presumption against retroactivity need not apply to all provisions of an act, such as procedural provisions (citing *Landgraf*, 511 U.S. at 280)). Moreover, Yu was provided fair notice that this was the manner in which the Hearings would proceed.

The Administrative Record establishes that the Academy conducted the Disciplinary Hearings in conformity with the applicable Regulations [9] (*see* 2018 Regulations, Ch. 6, §6.5): the Executive Board was convened at the Superintendent's directive (*see* Admin. Record at 539) to consider all the evidence presented, including the offered testimony of witnesses, to determine whether, by a preponderance of the evidence, Yu was guilty of the seven misconduct charges levied against him; upon the Executive Board's findings that Yu was guilty of six of the misconduct charges, the necessary Phase II Hearing was conducted with Yu presenting evidence in an effort to "demonstrate[e] sufficient cause for [his] retention by a preponderance of the evidence" (2018 Regulations, Ch. 6, § 6.5(6)(a)); after deliberation, the Executive Board issued its recommendation to the Superintendent for his consideration; and, after considering of the Executive Board's recommendation, as well as "thoroughly review[ing] all of the evidence made

---

[9]  The Court notes that the procedures for Executive Board disciplinary hearings outlined in the 2011 Regulations are substantially the same as those stated in the 2018 Regulations. (*Cf.*, Admin. Record at 526-37.)

available to the Executive Board, and listen[ing] to portions of the recording of the hearing, the Superintendent accepted the Executive Board's recommendations of guilt on the six misconduct charges and non-guilt on one misconduct charge, but rejected its recommendation that Yu be retained, albeit with a one-year set-back and other conditions. As the Defendants aptly state, "Nothing in the Academy's policies and procedures mandates that the Superintendent must accept and adopt the E[xecutive ]Board's recommendation as to a disciplinary penalty." (Support Memo at 11 (citing *Doe*, 307 F. Supp.3d at 129 n.5 ("In Executive Board Hearings, the Executive Board send its recommendations to the Superintendent, who reviews the recommended penalty and issues a final decision.")).) Nor has Yu pointed the Court to such authority. Moreover, the Superintendent thoroughly articulated his reasons, supported by the evidentiary record, for not accepting the Executive Board's penal recommendations, *e.g.*: despite repeated instructions from the Academy regarding the importance of responsible alcohol consumption,[10] the evidence of Yu's extreme intoxication, which was the likely reason for any of Yu's alleged memory loss; that while intoxicated: Yu assaulted a man without provocation, stole his car, kidnapped his two young children (seated in the car), drove and crashed the car, and then fled the scene of the crash; finding unsupported by evidence Yu's theory that he "may have unknowingly consumed" a "date rape" drug placed in a beer provided to him earlier in the

---

[10]  During the Phase II Disciplinary Hearing, Yu called several classmates who testified that during one of a series of "Sea Year" program-related lectures, no specific cautions against the dangers of "spiked" drinks were delivered. (*See* Admin. Record at 1211 (testimony of Midn. Abbott), 1213 (testimony of Midn. Cannell), 1215 (testimony of Midn. Blauw), 1217-18 (testimony of Midn. Irizarry), and 1220 (testimony of Midn. Goretoy).) However, Yu did not offer any other evidence calling into question Helis' statement that Yu was instructed on "the importance of being responsible with alcohol consumption" on other occasions, as well. (Helis Decision ("Between Regimental training, sea year lectures, and being a member of one of the Academy's NCAA intercollegiate athletic teams, *you have heard on repeated occasions* the importance of being responsible with alcohol consumption." (emphasis added)).)

evening, especially since Yu provided "two different versions of when [he] might have taken the drug" and received a text message instruction from his father advising Yu to say he thought he was drugged.  (Helis Decision, *supra* at pp. 8-10.)  The Court cannot say that based upon the consideration of the relevant factors, it was a clear error of judgment for the Superintendent to conclude that Yu's "actions were dangerous to [him]self and others, and reflect[ed] great discredit upon [Yu] and the Academy," and "brought embarrassment on the Academy, the Regiment, and [Yu], as well as the U.S. Navy" (Helis Decision, *supra* at p.10), thereby warranting the decision to disenroll him.  Rather, because the Court is satisfied from its searching and careful review of the Administrative Record that there was sufficient evidence which rationally supports the Superintendent's choice of not accepting the Executive Board's penal recommendations but, instead, disenrolling Yu, the Helis Decision must be upheld.  *See Constitution Pipeline Co. v. N.Y.S. Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017) (quotations and citation omitted)., *cert. denied*, 138 S. Ct. 1697 (2018); *see also Alvarez Sosa v. Barr*, 369 F. Supp.3d 492, 500 (E.D.N.Y. 2019)(quoting *Constitution Pipeline*).

Finally, to the extent Plaintiff attempts to incorporate a Fifth Amendment due process claim in his First Cause of Action (*see* Complaint, ¶143), that claim is rejected.  Yu's being charged with misconduct pursuant to the 2011 Regulations, but having his Disciplinary Hearings conducted pursuant to procedures outlined in the 2018 Regulations comports with what the Second Circuit has found to constitute a fair hearing for a midshipman subject to disenrollment from the Academy, *i.e.*: "The Cadet[11] must be apprised of the specific charges against him.  He must be given an adequate opportunity to present his defense both from the point of view of time

---

[11]  "Cadet" is synonymous with "Midshipman".  (*See, e.g.*, 2018 Regulations, Ch.6, §6.1(1), n.2.)

and the use of witnesses and other evidence. * * * The hearing may be procedurally informal and need not be adversarial." *Wasson*, 382 F.2d at 812; *cf.*, 2018 Regulations, Ch. 6, § 6.2(1)(a)("The Executive Board hearings are conducted in an informal, non-adversarial manner. The Executive Board is a fact-finding body charged with presenting a recommendation to the Superintendent."). Review of the Administrative Record confirms that the Disciplinary Hearings afforded Yu "the rudiments of a fair hearing," *Wasson*, 382 F.2d at 812, since three separate hearing notices informed Yu (1) of the specific charges against him, and (2) that, while he was "not required to provide evidence, make a statement, or answer questions," the charges against him would "be considered based on the evidence, statements, and/or information presented at the hearing" including "consider[ing] all documentary evidence and witness testimony provided by [Yu], as well as the testimony provided by all other witnesses" (First Notice (ECF No. 2-3); *see also* Second Notice (ECF No. 2-4), and Final Notice (ECF No. 2-5)); and at least one adjournment of the Phase I Disciplinary Hearing occurred at Yu's request to allow him to prepare for that Hearing (*see* Complaint, ¶¶56-62). Moreover, as Plaintiff alleged, the Academy informed him that he "would be permitted to call the witnesses he wished at the hearing." (*Id.*, ¶68; *see also id.* at ¶82 ("On July 23, 2018, Plaintiff submitted a 'Supplemental – Witness and Evidence List'[] for use at the Executive Board hearing.").) While "Plaintiff introduced multiple exhibits" (*id.* at ¶103), he did not call any witnesses during Phase I.[12] Yet, all that was required was the fair opportunity to do so, which the Administrative Record demonstrates was provided. In sum, Yu has not overcome the presumption of regularity afforded to the Academy regarding the manner in which it conducted Phases I and II of Yu's Disciplinary Hearings.

---

[12] As the Administrative Record shows, Yu presented evidence and witnesses during Phase II of the Disciplinary Hearing.

* * *

The Court has considered Plaintiff's remaining arguments in opposition to the Dismissal Motion and find them to be without merit.

IV.    Conclusion

Upon a thorough, probing, in-depth review of the Administrative Record, the Court finds the Helis Decision was based upon consideration of the relevant facts and articulated a satisfactory explanation for the Superintendent's disenrollment decision.  Given the rational connection between the facts found and the choice made, no clear error of judgment in the Helis Decision lies, warranting it being upheld.  Accordingly, IT IS HEREBY ORDERED that the Defendants' Dismissal Motion is GRANTED; Plaintiff's Complaint is dismissed in its entirety. The Clerk of Court is directed to close this case.

For completeness, the Defendants' Letter Motion to Strike (ECF No. 18) is terminated as moot since the Court finds the Opposition did not support Plaintiff's Emergency Motion/OSC.

The March 2, 2020 Status Conference is marked off the Court's calendar.

SO ORDERED this 25th day of February 2020 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge